UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>TONYA ANDREWS, FACILITY ADMINISTRATOR OF GOLDEN STATE ANNEX, et al.,<br><br>　　　　Respondents. | Case No.: 1:25-cv-00680-KES-SKO (HC)<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS (Doc. 10), GRANT PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT RESPONDENT TO PROVIDE BOND HEARING BEFORE AN IMMIGRATION JUDGE |

　　　　Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He is represented in this action by Callard Cowdery, Esq., of the African Advocacy Network.

　　　　Petitioner filed the instant petition on June 4, 2025. (Doc. 1.) On July 9, 2025, Respondent filed a motion to dismiss the petition. (Doc. 10.) On July 29, 2025, Petitioner filed an opposition. (Doc. 13.)

　　　　Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be provided a bond

hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will recommend Respondent's motion to dismiss be denied, the petition be granted, and Respondent be directed to provide a bond hearing before an IJ.

## I.   BACKGROUND

Petitioner is a native and citizen of Jamaica. (Doc. 10-1 at 11.) He entered the United States illegally in 2001 without admission documentation or authority, after fleeing violence at the hands of a Jamaican gang. (Doc. 1-2 at 2; 10-1 at 12.) In 2005, Petitioner was convicted in the United States District Court for the Eastern District of Virginia of conspiracy to distribute cocaine base and illegal possession of a firearm. (Doc. 10-1 at 6, 9, 15.) He was sentenced to 312 months for the drug offense and 120 months to be served concurrently for the firearm offense. (Doc. 10-1 at 6, 9, 16.) After serving 258 months, Petitioner was released early from federal custody for good behavior. (Doc. 1-2 at 3.)

On March 20, 2023, Petitioner was detained by ICE and charged with inadmissibility for being present in the United States without being admitted or paroled in violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), and for being an illicit trafficker of a controlled substance in violation of INA Section 212(a)(2)(C). (Doc. 10-1 at 6, 12, 14.) Petitioner is detained under the mandatory detention provisions in INA § 236(c) and has been in continuous custody since March 20, 2023. (Doc. 10-1 at 3, 27.)

On April 28, 2023, the IJ sustained the charge of removability. (Doc. 10-1 at 3.) Petitioner sought relief from removal. (Doc. 10-1 at 3.) On May 4, 2023, Petitioner requested a bond hearing. (Doc. 1-2 at 3.) At the bond hearing on May 9, 2023, the IJ denied Petitioner's request, finding he did not have jurisdiction as Petitioner was subject to mandatory detention. (Doc. 1-2 at 3; 10-1 at 31.) From March 30, 2023, to October 31, 2023, Petitioner received multiple continuances to find counsel and to prepare an application for relief from removal.

On October 31, 2023, an IJ denied all relief and ordered Petitioner removed to either the United Kingdon or Jamaica. (Doc. 1-2 at 3; 10-1 at 34-37.) Petitioner appealed to the Board of

Immigration Appeals ("BIA"), and on July 24, 2024, the BIA dismissed the appeal and denied Petitioner's request for remand. (Doc. 1-2 at 3.)

On August 1, 2024, Petitioner filed a petition for review in the Ninth Circuit Court of Appeals. (Doc. 1-2 at 4; 10-1 at 42-43.)  On the same date, a stay of removal was issued, and it remains in place to date. (Doc. 1-2 at 4; 10-1 at 42-43.) Petitioner filed his opening brief on April 11, 2025. (Doc. 1-2 at 4; 10-1 at 43.) The petition for review remains pending. (Doc. 10-1 at 43.)

## II.     DISCUSSION

### A.  Motion to Dismiss

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.  The provisions of Rule 4, which are applicable to § 2241 petitions under Rule 1(b), provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."  The Advisory Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

### B.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c). See Demore v. Kim, 538 U.S. 510, 517 (2003).

### C.  Mandatory Detention under 8 U.S.C. § 1226(c)

Petitioner has been detained for approximately 2 years and 5 months pursuant to 8 U.S.C. § 1226(c), which, in relevant part, provides:

3

    (c) Detention of criminal aliens

        (1) Custody

            The Attorney General shall take into custody any alien who--

            (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

            (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

            (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year,

            (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

            (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,

            when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

        . . . .

        (4) Release

            The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C.A. § 1226 (West).

    Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." As noted above, Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing

4

so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." Id. at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226(c) mandates detention. Petitioner contends that, although the statute mandates detention, his detention without a bail review hearing has become so unreasonably prolonged as to violate his Fifth Amendment procedural due process rights.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

It is undisputed that Petitioner's detention is mandatory under § 1226(c), and he does not meet any of the conditions for release pursuant to § 1226(c)(2). Petitioner claims his detention has become so unreasonably prolonged that due process requires he be provided an individualized bond hearing. The Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as-applied challenge to 8 U.S.C. § 1226(c); however, the Supreme Court's statutory

5

decisions regarding mandatory detention provide guidance regarding prolonged detention in an as-applied challenge under the Due Process Clause.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is materially different from the present case.

In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690. The civil confinement at issue was not limited, "but potentially permanent." Id. at 691. The Court observed that where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation marks and citation omitted). Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), complaining that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. The Court also noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the

6

minority of cases in which the alien chooses to appeal." Id. at 530. Nevertheless, the majority went on to hold that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31. In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which noted that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir.2015). In Jennings v. Rodriguez, however, the Supreme Court determined that the Ninth Circuit had misapplied the doctrine of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1226(c) fell "far short of a 'plausible statutory construction.'" 583 U.S. 281, 296, 303-04. The Jennings Court interpreted § 1226(c) as having a "definite termination point" to the length of detention, - the "conclusion of removal proceedings" – and remanded the case to the Ninth Circuit to consider the constitutional arguments on their merits. Id. at 304. Jennings therefore held that § 1226(c) on its face authorized detention without a bond hearing. The Court did not, however, provide guidance on whether an alien could assert a challenge under the Fifth Amendment due process clause as applied to a petitioner in his individual circumstance.

Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, including this Court, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the

community, was unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025); Diep, No. 1:24-CV-01238-SKO (HC), 2025 WL 604744; A.E., 1:25-cv-00107-KES-SKO, 2025 WL 1424382.

The Ninth Circuit has also noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such

---

[1] Mathews v. Eldridge, 424 U.S. 319 (1976).

8

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been detained approximately 2 years and 5 months. Compared to the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's period of detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. The Ninth Circuit has also held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Thus, the factor appears to weigh heavily in favor of Petitioner.

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." 53 F.4th at 1208. The Ninth Circuit added that it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. According to the Ninth Circuit, this is because detentions longer than six months were considered "prolonged" in the context of detentions "for which no individualized bond hearings had taken place at all."

In Rodriguez Diaz, the petitioner had received a bond hearing after he was detained. Id. at 1207. Here, unlike the petitioner in Rodriguez Diaz, Petitioner has not received the benefit of a bond hearing. Petitioner requested a bond hearing, but the IJ denied the request for lack of jurisdiction. The Ninth Circuit noted that detentions longer than six months were considered "prolonged" in cases such as this where "no individualized bond hearings had taken place at all." Id. at 1207. The appellate court found this distinction significant. Id. Thus, Petitioner's private interest in being free from prolonged detention of over 2 years weighs in his favor.

The Court also considers whether the reason for the lengthy period of detention is due to Petitioner's own actions. Rodriguez Diaz, 53 F.4th at 1208; Demore, 538 U.S. at 530-31. Arguably,

1  some of the detention period from March 30, 2023, to October 31, 2023, was due to Petitioner's
2  requests for continuances to seek counsel and to prepare pleadings. However, the balance of the
3  detention period cannot be attributed solely to Petitioner. For instance, Petitioner filed an appeal of the
4  BIA's October 31, 2023, decision, but the BIA did not dismiss the appeal until July 24, 2024.
5  Similarly, Petitioner acted swiftly in filing a petition for review on August 1, 2024, in the Ninth
6  Circuit shortly after the BIA's July 24, 2024, decision, but the petition remains pending to this day.
7  Thus, Petitioner's private interest in being free from prolonged detention is not diminished by this own
8  actions.

9  As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through
10 the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,"
11 Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of Petitioner. The "risk of
12 an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or
13 custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3. Thus, the probable value of
14 additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided
15 virtually no procedural safeguards at all. Given that Petitioner has been held without a bond hearing
16 for nearly two-and-a-half years, and it is not clear when detention will end, the risk of erroneous
17 deprivation weighs in favor of granting a bond hearing.

18 In the third factor, the Court weighs the government's interest, "including the function
19 involved and the fiscal and administrative burdens that the additional or substitute requirement would
20 entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in
21 effecting removal. Demore, 538 U.S. at 531. As other courts have recognized, however, the key
22 government interest at stake here "is not the continued detention of Petitioner, but the government's
23 ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL
24 1862254, at *7 (D. Or. 2020) (collecting cases). Here, the government's asserted interest is hinged on
25 mere speculation about Petitioner's risk of flight or dangerousness. Providing a bond hearing would
26 not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond
27 hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re
28 Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006). Given "the minimal cost of conducting a bond hearing, and

the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's interest.

In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community. The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

### III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS Respondent's motion to dismiss (Doc. 10) be DENIED, Petitioner's petition for writ of habeas corpus be GRANTED, and Respondent be DIRECTED to provide Petitioner with a bond hearing before an IJ where the Government must demonstrate by clear and convincing evidence that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **August 18, 2025**                                /s/ *Sheila K. Oberto*
                                                                        UNITED STATES MAGISTRATE JUDGE